Good morning, your honors. May it please the court, John R. Fuchs for appellants and plaintiffs representing myself and my wife. So you are the Fuchs of the case, right? We thought so, but we weren't sure. Yeah, contrary. And I take issue with what Abraham Lincoln said about he represents himself as a fool for a client. Well, we'll see. Well, I've been doing litigation for 40 years, and this is the kind of litigation I do. Early in my legal career, about 30 years ago, I went to a seminar on insurance companies, and the first speaker got up and said, let me explain insurance companies to you. The goal of an insurance company is to collect premiums and keep them. And I thought, well, that's kind of a funny joke to start a seminar until I realized that the joke was on me when we had our flood. At the time, I was having trouble collecting from State Farm for what was clearly covered claims. I talked to a friend. Well, counsel, with respect, I appreciate your argument there, but since we don't have a whole lot of time, let's talk about what actually happened in this case. I realize you disagree with them. They disagree with you. But take, for example, your claim for bad faith and punitive damages. You've got Major v. Western Home. You've got Franchetti v. American Motorists. You've got Chateau, Chambre, and so on that set the standard for what you have to show in order to prove these kinds of claims. The district court treated the things that were sent to the arbitrator as, in quotes, reasonable. The other claims were basically they're saying we dispute these. Let's get a ruling. Once they got that, then they paid promptly. Given the cases that I cite, the state cases, what do you rely upon for the idea that, as a matter of law, you are not entitled to bad faith or punitive damages? We rely on the facts, and the facts are that State Farm never conducted a fair, thorough, and complete investigation. Well, counsel, with respect, those are, of course, loaded words. But the court here had to look at what was presented to it. And at least having read the record and looked at this, you know, I see you disagreed. No question about it. You were aggressive on your part. They weren't perfect. They certainly weren't. But the bottom line was they, for example, with respect to the value of certain things under the policy, they asked for an appraisal. They're entitled to do that, right? Yes, but you've gone to the second step. The first step was that these claims were made multiple times to them by letter, with invoices, with everything. They never denied them at all, and they're required by the operations manual to deny them in writing. So are you saying that if any of our political leaders repeat, repeat, and repeat that something is true, that if somebody doesn't deny them every time, they're true? Is that what you're saying? No. I don't want to get into the politics, considering what the reputation of the man is saying. I'm just naming the concept, you know. Just because somebody says it repeatedly and each one isn't denied doesn't mean that it's true, right? In the insurance context, no. In the insurance context, an insurer has a duty to deal fairly with the insured, and that means that if they're disputing the claims or denying the claims, they have to do so in writing. And Your Honor got to the valuation point. What I think you're missing on this is that State Farm spent 15 months denying coverage. They kept saying these are not covered claims, although they never said it in writing as they were supposed to until we got to litigation. They simply didn't pay the claims. They never disputed valuation. There is not a single item in the record where they questioned the valuation of the claims. With respect, counsel, you and I are looking at very different records, because the record that I read shows that there were certain items that they didn't know what they were worth. So they had an appraiser determine what they were worth, and as soon as that happened, they then paid the difference on what they paid you previously based upon what they thought previously they were worth. Is that wrong?  I get that. I get that. And that's an unreasonable delay. And they waited over a year before invoking the appraisal process, and they did so three months before a trial because they knew they were going to lose the trial. Judge O'Connell had denied the summary judgment on a breach of contract claim. It was clear they owed money. And so they did a complete 180-degree turn from denying coverage for 15 months. They suddenly said, oh, no, no, no, we're questioning valuation, which they had to do because appraisers aren't entitled to determine coverage issues. They're only entitled to determine valuation issues. Mr. Fuchs, let me stop you right there just for a second. Help me with some dates. When did you first submit your claim to State Farm? July 27, 2015, the date of the flood. And when did State Farm make its ‑‑ July 27, 2015, correct? And did State Farm make a payment to you on or about September 4, 2015, of $38,000 approximately for some of the work that had been done to the house? I believe that's the correct date and amount. Okay. They did pay certain of the claims because it was absolutely clear that the damage to the structure was flood damage resulting from the overpressure situation. And is it your position that when you submitted your claim on July 27, 2015, you submitted all of the material, all of the support, everything that was required from the standpoint of your obligation as the insured under the policy? No, we did not on that date. Let me explain what happened. I was coming from court and got this frantic call from my wife that she came into the house and there was six inches of water covering the first floor. And she didn't know what to do and she traced it to a second floor toilet hose that had blown. And I explained to her there was a shutoff valve there under the toilet and she got down and shut off the water so it stopped the flow. We'd both been out of the house for three or four hours. At that point, I called my State Farm agent in the Palisades and he referred me to the number to call State Farm. And I filed the claim saying we've got massive flood damage, we don't know the extent of it, it's in the floors, the walls, the ceilings, the carpets, the hardwood floor, the upholstery, the electronics, and all of that. And they sent an appraiser or a claims adjuster out. And over the course of the next 30 days or so, we submitted the information to support the claims. For example, on the furniture that the claims adjuster said was completely destroyed, we submitted invoices, probably not as promptly as we could have, but we had an interior designer come in and give us an invoice for replacement furniture for $44,000, telling us that was like, kind, and quality to what was destroyed. But, Counsel, you obviously are an experienced lawyer. You know that if you and I go to some furniture store over here and we buy a sofa, it's brand new, we've got the invoice right there, we've paid for it, and we put it here in the court and somebody leaves a water fountain on and it gets flooded and gets destroyed, it's not worth what we paid for it even earlier in the day, is it? Oh, I understand there's depreciation on that. Exactly. But what State Farm paid on the furniture was $3,000. On $44,000 were the furniture that was furniture, draperies, carpets, pillows, everything in the family room was completely destroyed because the water just came down through the ceiling. And my wife's an estate planning lawyer, and when people die, individuals fight over the stupidest things because their parents used to have them. They have no commercial value whatsoever. And you may have a wonderful room, you loved it, you loved everything, but it may be old. I don't know. It might have been brand new, but it might be really old. And commercially, which is what the insurance companies deal with, it may not be worth very much. They obviously thought it wasn't worth what you thought it was. There's nothing wrong with that, is there? No, I understand that. But it was probably a six- or eight-year-old furniture that they depreciated down to $3,000. And then when we presented invoices for $44,000, they still refused to pay any more than the $3,000. Let me ask you this. If you had taken that furniture and had a garage sale, what do you think you would have gotten for it? We probably could have gotten $15,000 to $20,000 for it because it was all custom-made furniture. You must live in an area where you do better at garage sales than Manhattan Beach where I live. Well, it was all custom-made furniture. And just to give you one example, it was a huge L-shaped sofa that was destroyed. State Farms Claims Adjuster picked out something from Wayfair that was the wrong color, the wrong size, had no relationship to what we had. And as I've said kindly in the brief, it was perhaps the ugliest sofa on the planet. And that's what they expected us to replace it with. That's why we hired an interior designer to come in and tell us what equivalent furniture would be. I wouldn't have a problem if State Farm had come in and said, okay, I see your invoices for $44,000, but this furniture really wasn't worth that. We'll pay $20,000. Mr. Fuchs, let's go back to the timeline if we could, please, just for a second. You filed your original claim on July 27, 2015. We established there was a payment made in early September 2015. When did you file your lawsuit against State Farm? In February of 2016. February of 2016. So at the time you filed your lawsuit, had you already submitted the $49,000 claim for the replacement of your electronics? No, we had not gotten an invoice until after the lawsuit was filed. Okay. Had you submitted your claim for $100,000 for medical bills that you claimed were caused, for your spouse's medical bills you claimed were caused by exposure to mold, et cetera, and her claim for emotional distress? No, we hadn't because we hadn't gotten the diagnosis yet on what the cause of her upper respiratory problem was. Had you submitted? I'd like to reserve some time. I see I'm down to three minutes. Yeah. Had you submitted your claim for replacement to the water heater and the repair of the water heater pedestal and drywall in the garage before you filed suit against State Farm? We submitted the actual invoices for the repair work. We also submitted the invoices for the hardwood floor. We submitted all the invoices for the alternative living expenses, and we submitted the invoices for the replacement furniture. Had you submitted the $55,000 for the 389 hours of supervision work that you had performed? Yes, we did. Okay. Now let me, and I know you want to reserve time. Your experience, you've been dealing with insurance companies, it sounds like, throughout your professional career. Did you actually believe that there was coverage under the State Farm policy for 389 hours of supervision work and $100,000 for medical bills? The supervision, yes, because I do a lot of construction defects work, and every single construction project I've ever worked on has a construction supervisor. They had no construction supervisor, and my wife was required to be the construction supervisor to explain what was going on, and when she wasn't available, I had to stay home and be the construction supervisor, and I felt that was a legitimate expense under the policy. But what State Farm had done is hired or required that we hire somebody who would do the work on the cheap. That was ServiceMaster? Yes. Okay. You want to reserve some time. Yes. Okay. Thank you. Good morning. Good morning. May it please the Court. Is it State Farm's motto that they're fast, fair, and friendly, or is that farmers? You're in good hands in State Farm, or is that all state? No, like a good neighbor. Like a good neighbor. Okay, that's it. All right. Were you a good neighbor here? Yes, we were, Your Honor, and I do believe that the discussion concerning the furniture expenses is probably the best example as to why the district court's judgment in favor of State Farm was correct. The furniture expense actually came several months after the lawsuit was filed in February of 2016. That came in August. That's the claim about the value of the furniture came afterwards, right? Correct. That came in August of 2016, just a few months before they filed the motion for summary judgment. In that letter, they also indicate that there would be additional work, and specifically they were asking State Farm to pay for the fabric for the draperies and for the couch and pillows, et cetera, so then Albright was going to be making the draperies. So as you can see, the claims continued to come not just right after the flood in July of 2015, but including up through and beyond the filing of the lawsuit. State Farm was dealing with 11 claims. Six of those claims were appropriately denied for coverage or denied because no further policy benefits were due, including, as Judge Christensen pointed out, the supervisory time, the medical expenses, the emotional distress expenses. State Farm had already paid the mold claim, had already paid the claim for the laundry room, as the district court found, and there was a remaining claim for the sheer wall that the district court also found State Farm properly denied because the appellants admitted that the sheer wall was damaged by their contractor and therefore State Farm was not obligated to cover those. Counsel, what does State Farm do? And I'm sure this was developed through discovery, and I haven't dug into it. I apologize. But how does State Farm handle its adjusting of an ongoing claim after it's been sued? It depends. Each case is different. In this case, it was sued by a lawyer that's skilled in suing insurance companies. Let's add that to it. Okay. They chose to allow us to evaluate those damages as they were being presented. Allow us? I'm sorry. Allow counsel to conduct discovery on those, meaning request the documents. That's something State Farm would typically do. For example, the appellant said, we have all these electronic expenses. The response was, where are those invoices? I did the same thing when that came up again during the course of the litigation, asked for those invoices to support those expenses, which eventually came long afterwards. But State Farm does not ignore claims, even though litigation commences. It continues to evaluate those claims. The five remaining claims here, however, were the water heater claim. That was subject to a legitimate not only coverage dispute, but there was some concerns about the destruction of the water heater before State Farm had the opportunity to review it, especially given that it wasn't discovered to have been leaking until at least a couple of months after the initial loss. So there was some investigation that needed to be done concerning the cause of the water heater loss. Was there any claim of spoliation regarding the water heater? I wouldn't characterize it as spoliation, Your Honor. I would characterize it as the appellants failed to satisfy their duties in the event of loss, which required them to cooperate with State Farm in part by giving prompt notice so that State Farm could say, look, could you please save the water heater, have the plumber save the water heater, have somebody take pictures perhaps, something to that effect, but they were not given that opportunity. So there is a provision in the policy that requires policyholders to cooperate. And was it the water heater that was the alleged source of the flooding? Is that right? It was not the main source of the flooding. So there were essentially potentially two claims really. It was the July 2015 water loss from the upstairs toilet, the supply line leak, and that was as a result apparently of some high water pressure. That was fixed fairly promptly. The water pressure was corrected. Nonetheless, two months later or a little over two months in October of 2015, State Farm received notice of the water heater leak, which apparently had either gone unnoticed or had just occurred suddenly. Regardless, State Farm would have an opportunity under the policy to take a look at that water heater, just as they did with the laundry room, for example. That came later as well. I believe that was also in October of 2015. State Farm went out there in November to look at the laundry room and knew that the water heater was already gone, but the point being each time an additional claim came up, State Farm was addressing those claims. How many claims were made? My colleague began to go through this, but how many claims in the aggregate were made by the fugitives after the lawsuit had originally been filed? In other words, novel claims at that point. The new claims would include the, we would call it the revived water heater claim, the furniture claim, which was a large expense, the electronic claim, which was another large expense, and actually the ALE, I would disagree with Appellant, the ALE related to the Alternative Living Expense. I'm sorry, Your Honor. Yes, Alternative Living Expense. I apologize. That came, that was tendered on February 5, so that was about six days before the lawsuit was filed. That was not necessarily known to State Farm before that time, and even then there was some question as to what this Alternative Living Expense was, and we did conduct some discovery and eventually got the receipts and the backup for that information. But until the policyholder provides the actual information, State Farm can only do its best, and in this case that's what it did, even with the furniture expense. During the course of the investigation, it was provided with simply lists, descriptions by the appellants of what that furniture was, and although it may not have researched the exact furniture that the appellants would have liked, it did set forth its research concerning those efforts to try to place a value on it, to try to get the appellants paid. But it wasn't until much later during the course of litigation that that came. I mean, this is certainly a case where there was no bad faith. The appellants have not cited to any efforts by State Farm to somehow deny them benefits. In fact, I would say this is a case demonstrating good faith. Once we got the appraisal award, State Farm received it and decided to not dispute any further, to simply pay given the amount that the appraisers had reached. And the appraisers did not agree with the appellants on each category. In fact, they disagreed on three of the five categories with the appellants, which further demonstrates that this case is simply a dispute over the value of some of these losses in coverage. Counsel, since you're on the appraisal and the appraisal process, appraisal award, you're saying, and I think the record reflects this, that State Farm had no obligation to pay that award, paid it on its own volition, so to speak. But wasn't the establishment of the appraisal award, the payment by State Farm of that, after adjusting for the two or three things that you mentioned, wasn't that then the predicate for the trial judge's ruling on the breach of contract claim? Didn't she then say they've satisfied their obligation, there can't be a breach of contract? That's absolutely correct, Your Honor. I mean, obviously the four elements for breach are, you know, you have to prove actual breach, which I disagree that there was even a breach here. Payment without the requirement from the judge is voluntary. She noted that. She repeatedly attempted to correct the appellants when they misconstrued her ruling. I think it's clear from the record, the excerpts of the record at page 26, that during that hearing I informed the court that State Farm would be voluntarily paying those amounts. That was a final status conference, so we were up at trial, and the district court simply wanted to know what was left to try, what issues were left. She realized there were no issues left because if there are no damages, what is the jury going to be evaluating here? So she decided to not decide the issue at that point in time. She decided that I needed to file my motion to modify and confirm the award by that Friday. Page 33 of the record in the transcript is where she asked me also at the same date to issue the checks by that time. And that was not an order or a judgment against State Farm. It was simply providing us with a date certain by which we had to do some things. She was attempting to get the case moved along. There had been some delays. But it certainly wasn't an order that can be transformed into a judgment. The appraisal award simply sets the value. The Devenwood v. Farmers insurance exchange case, which the district court pointed to, sets forth that very concept. It's quite clear the appraisers do not look at liability issues. They don't look at coverage issues. What they're looking at is what is the value of this item or what is it going to cost to replace it or repair it, and that's it. That's why we see the caution at the end of the appraisal award indicating that they've gone no further than that. State Farm acted appropriately by moving to modify that award, and the court obviously agreed with the reduction that State Farm had made. But the payments had already been made by the time the court even confirmed the award. So by the time she confirmed it, State Farm had made those payments and there was really nothing left to try. So to establish a breach of contract claim, the appellant still needed to satisfy those elements, and they simply could not do that. They concede that those payments were made. They also do not dispute that with respect to the first six categories, in their briefs at least, that the district court was correct in finding that State Farm appropriately either denied coverage or withheld further policy benefits. I think this case is clear. State Farm satisfied its obligations under the contract. There's nothing left to do. It's also clear that there was no bad faith, and certainly no clear and convincing evidence of any malice, oppression, or fraud. And for all of those reasons, State Farm would request respectfully that this court affirm the district court's judgment in favor of State Farm. With that, I'll submit unless there are any questions. Questions by anyone? I think not. Thank you. Thank you. First of all, I'd like to correct a couple of the timeline errors made by Ms. Rojas. All four of the five claims were properly documented and submitted before the lawsuit was filed. She talks about the furniture claim not being submitted until August of 2016. August of 2016 was when the furniture was delivered. It was ordered in December, but it was custom-made in North Carolina, and it took eight months to get it made. But the cost of it was provided in December. As far as the hardwood floor, the documentation for that was provided in December, along with a check showing that I paid a 50 percent deposit and telling them that the work is going to be done in January. They ignored it. They never came out to look at it. I told them we're going to have to move out of the house for four or five days because of the polyurethane varnish. You can't live in the house, and there was no way to get in or out of the house without stepping on the hardwood. I submitted the receipts promptly. And if you'll forgive me a minor story on it, two of the days we were out of the house, my wife and I had breakfast at Starbucks one day and at the Jack in the Box drive-thru a second day. If I wanted to run up the costs on them, I wouldn't have done that. I was trying to keep the costs reasonable. But four of the five claims were properly documented before the lawsuit was filed, and we got nowhere. As far as the water heater is concerned, I notified them immediately the day that it leaked and told them who was going to replace it. Without a water heater, we've got no hot water. So I had to have it replaced immediately, and I had to pay for it. They simply ignored the information. They could have easily – I told them who the plumbers were. We had regular plumbers who had worked on it. I told them who the plumbers were. All they had to do was call the plumbers and say, preserve that water heater. But they didn't. Okay, Counselor, you're over your time. Let me ask my colleagues whether either has additional questions. I just want to say the most outrageous thing the judge did below was entering judgment for State Farm. We were clearly the prevailing parties. We were awarded $65,000, and State Farm didn't pay anything voluntarily. They were contractually obligated under the policy to pay that award within 30 days. And under 1287.4 of CCP, a confirmed appraisal award is a judgment. Okay. I appreciate your argument, Counsel. Thank you both for your argument. The case just argued is submitted.
judges: Fernandez, M. Smith, Christensen